**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-02354-STV

ROLANDO CABRERA RODRIGUEZ,

     Petitioner,

v.

TODD BLANCHE, *et al*,

     Respondents.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

     This matter is before the Court on Petitioner Rolando Cabrera Rodriguez's Petition for Writ of Habeas Corpus (the "Petition"). [#1] The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment. [#6] In his Petition, Mr. Cabrera Rodriguez seeks a writ of habeas corpus under 28 U.S.C. § 2243, challenging his detention in Immigration and Customs Enforcement ("ICE") custody. [#1] The Court has carefully considered the Petition and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Petition. For the following reasons, the Petition is **GRANTED**.

## I.    FACTUAL BACKGROUND

     The parties do not appear to dispute the material facts of Mr. Cabrera Rodriguez's immigration history. [*See* ##1 at ¶¶ 34-47; 8 at 2-3] Mr. Cabrera Rodriguez is a 60-year-old Cuban citizen who entered the United States on January 8, 2025, through the use of

the CBP One application.  [##1 at ¶¶ 34, 36; 8 at 2]  At the time of his entry into the United States, Petitioner was granted parole which he states was valid until January 6, 2027. [#1 at ¶ 37]  This date of expiration is corroborated by Form I-94 documentation in the record.[1]  [*See* #1-4]  His parole was subsequently altered to end on April 18, 2025.  [##1 at ¶ 37; 8 at 2; 1-5]

Petitioner provides the following information regarding the events leading to his current detention.  On November 13, 2025, Petitioner was stopped by a police officer while driving home from work due to a malfunctioning license plate light.  [#1 at ¶ 38] Petitioner did not have a valid driver's license in his possession during this stop.  [*Id.*] Petitioner was taken into custody that same day.  [*Id.*]  On November 14, 2025, Respondents issued a warrant for arrest reflecting that Petitioner was being detained pursuant to Immigration and Nationality Act ("INA") Section 236.  [*Id.* at ¶ 39; #8 at 3]

On December 17, 2025, Petitioner was charged as inadmissible under INA Section 212(a)(7)(A)(i)(I) and is currently detained at the Aurora Detention Center in Colorado. [#1 at ¶ 40]  On January 7, 2026, Petitioner applied for asylum and for withholding of removal.  [*Id.* at ¶ 41; #8 at 3]  That application is currently pending. [#1 at ¶ 41] Petitioner has also filed an I-485 Application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act.  [*Id.* at ¶ 42; #8 at 3]  Petitioner has no criminal history and his son is a legal permanent resident of the United States.[2]  [*Id.* at ¶¶ 44-45]

---

[1] Respondents do not deny the validity of this document or that, prior to April 2025, Petitioner was subject to a different parole date.
[2] Respondents do not deny or otherwise comment on these two facts.

## II.    PROCEDURAL BACKGROUND

Petitioner previously filed a habeas petition in the District of Colorado.  *See Cabrera Rodriguez v. Blanche*, No. 26-cv-00969-RMR (D. Colo.) (the "969 Matter").  The court in that case found that Petitioner was not a member of the class certified in *Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 3251143, at *2 (D. Colo. Nov. 21, 2025). [969 Matter, #17 at 3-4] Petitioner did not make the argument that his parole was unlawfully terminated in this initial habeas petition, though this argument was made in Petitioner's reply to Respondents' response in that case.  [*Id.* at 4-5]  The initial petition was denied without prejudice.  [*Id.* at 5]

## III.    LEGAL STANDARD

Section 2241 authorizes courts to adjudicate a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This includes "[c]hallenges to immigration detention." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881-NYW, 2025 WL 3653158, at *3 (D. Colo. Dec. 17, 2025).  "The writ of habeas corpus is designed to challenge 'the fact or duration' of a person's confinement."  *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919, at *3 (D. Colo. May 5, 2025) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).  The individual in custody bears the burden of proving that their detention is unlawful.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## IV.    ANALYSIS

Petitioner contends that his purported mandatory detention under Section 1225(b) violates the INA, the Administrative Procedures Act ("APA"), and his Fifth Amendment Due Process rights.  [*See generally* #1]  While the parties substantially focus on whether Petitioner's current detention is governed by Section 1225(b) or Section 1226(a), the court finds it ultimately need not resolve that question.  Based on the Court's review of the record, Petitioner's parole was not validly terminated and thus remains in effect now.

Applicants for admission to the United States may be released on parole on a "case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  A noncitizen must be returned to their prior custody status "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served."  *Id.*  Parole may terminate either by operation of law upon expiration of the authorized period or by discretionary action of the Secretary.   8 C.F.R. § 212.5(e).

Where parole expires according to its terms, it is "automatically terminated," and no written notice is required.   *Id.* § 212.5(e)(1)(ii).   If parole does not terminate automatically, it may be terminated when its purpose is accomplished or when a designated official determines that continued presence is no longer warranted; termination under this provision requires written notice, which may be satisfied by service of a charging document. *Id.* § 212.5(e)(2)(i).  A "charging document" is defined as a "written instrument which initiates a proceeding before an Immigration Judge."  *Id.* § 244.1(3).  As applied to Petitioner, these documents may include "a Notice to Appear." *Id.*

It appears that Petitioner received some form of notice of the termination of his parole in April 2025.  [#1 at ¶ 59]  This notice is not in the record.  The only document in the record relevant to this termination is what appears to be an image of a webpage displaying Petitioner's "Most Recent I-94" information, which shows a parole termination date of "2025 April 18."  [*See* #1-5]

As previously described, 8 C.F.R. § 212.5(e)(2)(i) provides that parole may be terminated prior to its expiration, with written notice, "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [an authorized official], neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States."  Petitioner alleges, and Respondents do not refute, that his April 2025 termination was accompanied by no explanation or by any change of circumstances.  [#1 at ¶¶ 4; 37]  There is no other evidence on the record explaining why Petitioner's parole was terminated.

Respondents provide no information which would indicate that, prior to its termination, the purpose of Petitioner's parole was accomplished or that any authorized official made a determination that neither humanitarian reasons nor the public benefit warranted his continued presence in the United States, as is required by federal regulations.  Petitioner alleges that revocation of his parole was unlawful under the APA [*see id.* at ¶¶ 1; 11; 17; 99-104], yet Respondents offer no evidence to contradict this assertion.  The only evidence Respondents provide is that Petitioner, in his I-485 Application, stated that his parole "was terminated on April 18, 2025."  [#8 at 2]  But this does nothing to support the argument that Petitioner's parole was terminated *lawfully*.

Indeed, Petitioner's argument is that his parole was terminated, but that such termination was unlawful.  [*See*, *e.g.*, #1 at ¶ 100]

For this reason alone, the Court finds that termination of Petitioner's parole contravened the APA.  The APA requires that a reviewing court "hold unlawful" agency action that is "not in accordance with the law."  5 U.S.C. § 706(2)(A).  There is no evidence that termination of Petitioner's parole complied with the requirements of 8 C.F.R. § 212.5(e)(2)(i).  Accordingly, the Court must hold that early termination of Petitioner's parole was unlawful and must set it aside.

The Court is aware of parole termination policy materials which are not in the record before it.  For example, in March of 2025, parole was terminated for certain Cuban, Haitian, Nicaraguan, and Venezuelan citizens in the United States around the same time period that Petitioner's parole was terminated.  *See* Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611-01 (Mar. 25, 2025).  The lengthy notice terminating parole for certain non-citizens indicates that termination occurred to comport with Executive Order 14165, entitled "Securing Our Borders," which establishes a federal policy of "deterring and preventing the entry of illegal [noncitizens] into the United States" and "removing promptly all [noncitizens] who enter or remain [in the United States] in violation of Federal law."  *Id.* (citing Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025)).

Particularly in the case of Cuban citizens, the parole process was initially intended to:

> provide a significant public benefit for the United States, by reducing unauthorized entries along our [Southwest Border], while also addressing the urgent humanitarian reasons that are driving hundreds of thousands of Cubans to flee their home country, to include crippling economic conditions

6

and dire food shortages, widespread social unrest, and the Government of Cuba's . . . violent repression of dissent.

Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266-02 (Jan. 9, 2023). Anticipated public benefits of the parole program included: (1) enhancement of security of the Southwest Border by reduction of irregular migration; (2) improvement of vetting for national security and public safety; (3) reduction of strain on the Department of Homeland Security ("DHS"); (4) minimization of domestic impact of irregular migration; (5) disincentivizing dangerous journeys that put migrants and risk; and (6) management of migration collaboratively in the hemisphere.[3]  *Id.*  As to humanitarian considerations, the parole process was implemented to "address the urgent humanitarian needs of Cuban nationals who have fled crippling economic conditions and social unrest in Cuba" by "provid[ing] a safe mechanism for Cuban nationals who seek to leave their home country to enter the United States without having to make the dangerous journey to the United States." *Id.*

In the Notice revoking parole for these non-citizens, the Government found that the parole program did not "serve a significant public benefit, [was] not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, [was] not serving [its] intended purposes, and [was] inconsistent with the Administration's foreign policy goals." Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611-01 (Mar. 25, 2025).

---

[3] Similar or the same benefits were anticipated by the separate parole programs for Haitians, Nicaraguans, and Venezuelans.  *See* Implementation of a Parole Process of Haitians, 88 Fed. Reg. 1243-01 (Jan. 9, 2023); Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255-01 (Jan. 9, 2023); Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63507-01 (Oct. 19, 2022).

Though the "urgent humanitarian reasons" for granting parole may still exist, the Government indicated that such reasons are "best addressed on a case-by-case basis." *Id.*

As previously stated, there is no evidence in the record suggesting that this rationale for termination applies to the termination of Petitioner's parole in April 2025. However, even if this rationale were applicable to Plaintiff, courts have found that termination of parole pursuant to the relevant Notice in the Federal Register exceeds Respondents' statutory authority and violates the APA. *Doe v. U.S. Dep't of Homeland Sec.*, No. 25-cv-12245-ADB, 2026 WL 880442, at *11-12 (D. Mass. Mar. 31, 2026); *Salazar v. Casey*, No. 25-cv-2784 JLS (VET), 2025 WL 3063629, at *5 (C.D. Cal. Nov. 3, 2025) (collecting cases for the proposition that a mass form email stating that parole will be terminated in seven days is insufficient to fulfill the 8 C.F.R. § 212.5(e)(2) notice requirement). These courts reason that the relevant termination notices fail to indicate that "the purpose of parole was accomplished or that an authorized official . . . made any decision to that effect." *Doe*, 2026 WL 880442, at *11. Without this compliance with the relevant regulations, courts have thus found that the parole terminations of this nature are "not in accordance with law" as required under the APA. *Id.* at *12 (citing 5 U.S.C. § 706(2)(A)). The remedy in such a case is to hold the terminations unlawful, to set them aside, and to order respondents to return petitioners to the parole status that they held prior to the April 2025 termination. *Id.*

In addition, courts in other Districts have held that "revocation of parole requires a case-by-case assessment to comply with [Section 1182(d)(5)(A)]."[4] *Flores Altamura v. Unknown Party #1*, No. 1:26-cv-1197, 2026 WL 1141150, at *4 (W.D. Mich. Apr. 28, 2026) (quoting *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025)) (collecting cases). These courts have thus found that blanket termination of parole with notification by mass emailing does not comply with the statute as it does not constitute case-by-case determination. *Id.* And furthermore, courts have determined that termination of parole through this mechanism also violates petitioners' due process rights. *See*, *e.g.*, *Caisa Telenchana v. Hermosillo*, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *12 (W.D. Wash. Mar. 12, 2026); *Salazar*, 2025 WL 3063629, at *5. Though the Court need not address these other contentions regarding the lawfulness of Petitioner's parole termination at this time, it is clear that a dispute exists in Districts around the country as to whether parole termination by email and the relevant Notice in the Federal Register was lawful, with a majority of courts finding that it was not.

Here, Petitioner was provided no explanation as to why his parole was terminated and Respondents offer no additional information suggesting that they complied with 8 C.F.R. § 212.5(e)(2)(i). Because it does not appear that Respondents complied with the law when terminating Petitioner's parole, the Court must set aside the termination pursuant to the APA and re-instate Petitioner's former parole termination date and conditions. [*See* #1-4]

---

[4] Not all courts are in agreement on this issue. *See Doe v. Noem*, 152 F.4th 272, 286-87 (1st Cir. 2025) (finding that the Secretary of the DHS may proceed on a categorical basis when terminating parole pursuant to his or her authority under 8 U.S.C. § 1182(d)(5)(A)).

## V.      CONCLUSION

For the foregoing reasons, Mr. Cabrera Rodriguez's Petition is **GRANTED**.  The Court orders Respondents to release Mr. Cabrera Rodriguez from custody within seven days of this Order, subject to the conditions that existed under Petitioner's former Section 1182(d)(5)(A) parole.  The Court orders Respondents to file a status report within seven days of the issuance of the Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment.

DATED:  June 12, 2026                          BY THE COURT:


                                               s/Scott T. Varholak
                                               United States Magistrate Judge